1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHANIEL MCKINNON, et al., | Case No. 1:18-cv-01124-NONE-SAB |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT AGREEMENT |
| v. | |
| CITY OF MERCED, | (ECF No. 42) |
| Defendant. | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

Plaintiffs Nathaniel McKinnon, Courtney Bohanan, Edward Drum, Timothy Gaches, Joseph Perez, and Luis R. Solis (the "Named Plaintiffs"), bring this action on behalf of themselves and all similarly situated individuals, against Defendant City of Merced (the "City" or "Defendant"), alleging various wage and hour violations under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Currently before the Court is the parties' joint motion for approval of the conditional settlement agreement entered into by the parties and final certification of the FLSA collective action. (ECF No. 42.) Having considered the moving papers, the declarations and exhibits attached thereto, the arguments presented at the August 19, 2020 hearing, as well as the Court's file, the Court issues the following findings and recommendations recommending granting the parties' joint motion for preliminary approval of settlement and certification of the collective for purposes of settlement.

# I.

# BACKGROUND

Plaintiffs are seventy-five (75) current or former employees of Defendant City of Merced claiming unpaid overtime compensation under the Fair Labor Standards Act stemming from Defendant's alleged failure to include holiday-in-lieu pay ("HIL") in the regular rate of pay ("RROP") used to calculate overtime compensation.  (Mem. P. & A. Supp. Joint Mot. Approval FLSA Settlement Agreement ("Mot.") 7, ECF No. 42-1.)[1]  Specifically, Plaintiffs allege that because they were required to work on designated holidays that other City employees were allowed to take off, the holiday-in-lieu pay was compensation pursuant to the FLSA and should have been included in calculating and paying the Plaintiffs' overtime compensation.  (Id.)  The City denies that it was required to include holiday-in-lieu pay in the regular rate and asserts that the Plaintiffs were properly and fully compensated for their overtime work.  (Id.)

Plaintiffs' conditions of employment were governed by Memoranda of Understanding ("MOUs") between the City and: (1) the Merced Police Officers' Association ("MPOA"); (2) the Merced Association of Police Sergeants ("MAPS"); and (3) the Merced Association of City Employees ("MACE").  (Mot. 7; Decl. Gary M. Messing Supp. Joint Mot. Approval FLSA Settlement ("Messing Decl.") ¶¶ 9-10, ECF No. 42-3 at 1.)  Plaintiffs were required to work their regular assigned shift, regardless of whether it was a holiday.  (Mot. 7; Messing Decl. ¶ 11.)  Plaintiffs were paid compensation in lieu of observing holidays, and were not allowed to use this holiday-in-lieu pay as leave.  (Mot. 7-8; Messing Decl. ¶ 11.)  Defendant excluded holiday-in-lieu pay from the regular rate of pay used to calculate overtime for Plaintiffs.  (Id.)

Plaintiffs assert that Defendant has miscalculated their overtime compensation by not including the holiday-in-lieu pay in the overtime rate calculation.[2]  (Mot. 8.)  Plaintiffs contend that, by excluding the holiday-in-lieu pay from their regular rate of pay, Defendant violated the

---

[1]  All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

[2]  The parties proffer that in December 2018, after this lawsuit was filed, the City began including HIL pay in calculating and paying overtime and continues to do so as of the present time.  (Mot. 8; Messing Decl. ¶ 16.)

1    FLSA by failing to pay full compensation for all hours of overtime worked.  (Id.)

2         On August 17, 2018, the Named Plaintiffs filed this action.  (Mot. 8; Messing Decl. ¶¶

3    12-13; ECF Nos. 1, 2.)  On October 9, 2018, Defendant filed a motion to dismiss that was denied

4    on December 21, 2018.  (ECF Nos. 8, 20.)  On December 28, 2018, Defendant filed an answer to

5    the complaint.  (ECF No. 22.)  On February 6, 2019, the Court issued a scheduling order setting

6    among other dates, a trial date of January 26, 2021.  (ECF No. 25.)

7         On June 20, 2019, pursuant to the parties' stipulation, the Court issued an order

8    conditionally certifying this matter as a collective action.  (Mot. 8; ECF Nos. 28, 33.)  In addition

9    to the six (6) Named Plaintiffs, sixty-nine (69) current and former employees of the City filed

10   consents joining the action as Plaintiffs.  (Mot. 8; Messing Decl. ¶ 17.)  Of the seventy-five (75)

11   Plaintiffs, seventy-three (73) are or were employed by the City of Merced in the Police

12   Department, and the remaining two are employed as refuse equipment operates by the City.

13   (Id.)[3]

14        The parties proffer that after "extensive discovery and investigative activities, as well as

15   substantial negotiations, including an all-day mediation, the Parties [] reached an agreement to

16   settle this action for a total payment of $250,000, which will cover damages, attorneys' fees and

17   costs."  (Mot. 7.)  On May 14, 2020, the parties filed a notice of conditional settlement.  (ECF

18   No. 38; Mot. 9; Messing Decl. ¶ 28.)  On the same date, the Court vacated all pending dates and

19   matters and ordered Plaintiffs to file a motion for approval of settlement within sixty (60) days.

20   (ECF No. 39.)  Pursuant to the parties' stipulation, on July 14, 2020, the Court extended the

21   deadline for filing until July 17, 2020.  (ECF No. 41.)  On July 16, 2020, parties filed the joint

22   motion for approval of the FLSA settlement and set a hearing to occur on August 19, 2020.

23   _____

24   [3]  The parties note that in addition to Police Department employees and Refuse Equipment Officers, certain non-
     exempt employees of the City of Merced Fire Department did not have their HIL pay used to calculate and pay

25   overtime compensation.  These individuals filed a separate lawsuit regarding their FLSA claims entitled Englert, et
     al. v. City of Merced, United District Court, Eastern District of California, Case No. 1:18-cv-01239-NONE-SAB

26   ("Englert").  (Mot. 8; Messing Decl. ¶ 14.)  A settlement in that similar lawsuit was reached, with the undersigned
     issuing findings and recommendations recommending approval of the FLSA settlement agreement, with the findings

27   and recommendations subsequently adopted.  Englert v. City of Merced, No. 118CV01239NONESAB, 2020 WL
     2215749, at *2 (E.D. Cal. May 7, 2020), report and recommendation adopted, No. 118CV01239NONESAB, 2020

28   WL 2732031 (E.D. Cal. May 26, 2020).

(ECF No. 42.)  On August 19, 2020, the Court held a hearing on the motion via videoconference, at which Gary Messing and James Henderson appeared on behalf of Plaintiffs, and Michael Youril appeared on behalf of Defendant.

## II.

## LEGAL STANDARD

The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract or otherwise waived.  Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 69 (2013); Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 740 (1981).  The FLSA provides the right of an employee to represent similarly situated employees in a suit against their employer for the failure to pay minimum wage or overtime compensation.  29 U.S.C. § 216(b).  To participate in the collective action, an employee is required to give his consent in writing to become a party.  29 U.S.C. § 216(b); see Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989) (rights in a collective action under the FLSA are dependent on the employee receiving accurate and timely notice about the pendency of the collective action, so that the employee can make informed decisions about whether to participate).  "If an employee does not file a written consent, then that employee is not bound by the outcome of the collective action."  Edwards v. City of Long Beach, 467 F.Supp.2d 986, 989 (C.D. Cal. 2006).

Since an employee cannot waive claims under the FLSA, an FLSA claim "may not be settled without supervision of either the Secretary of Labor or a district court."  Nen Thio v. Genji, LLC, 14 F.Supp.3d 1324, 1333 (N.D. Cal. 2014); Selk v. Pioneers Mem'l Healthcare Dist., 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016); Kerzich v. Cty. of Tuolumne, 335 F.Supp.3d 1179, 1183 (E.D. Cal. 2018).  The Ninth Circuit has not established criteria for district courts to use in determining whether an FLSA collective action settlement should be approved.  Kerzich, 335 F.Supp.3d at 1183.  District courts in this circuit have used the Eleventh Circuit's approach which considers whether the settlement is a fair and reasonable resolution of a bona fide dispute.  Id.; Nen Thio, 14 F.Supp.3d at 1333; Selk, 159 F.Supp.3d at 1172.

After determining that a bona fide dispute exists, the court must determine whether the

settlement is fair and reasonable.  Nen Thio, 14 F.Supp.3d at 1340; Selk, 159 F.Supp.3d at 1172.
"In making this determination, many courts begin with the well-established criteria for assessing
whether a class action settlement is 'fair, reasonable, adequate' under Fed. R. Civ. P. 23(e),"
recognizing that not all the factors apply in an FLSA settlement  Selk, 159 F.Supp.3d at 1172;
Kerzich, 335 F.Supp.3d at 1184; Smith v. Kaiser Found. Hosps., No. 3:18-CV-00780-KSC, 2019
WL 5864170, at *10 (S.D. Cal. Nov. 7, 2019).  In this circuit, courts "have balanced factors such
as: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of
further litigation; the risk of maintaining class action status throughout the trial; the amount
offered in settlement; the extent of discovery completed and the stage of the proceedings; the
experience and views of counsel; the presence of a governmental participant; and the reaction of
the class members to the proposed settlement.  Kerzich, 335 F.Supp.3d at 1184 (quoting Khanna
v. Intercon Sec. Sys., Inc., No. 2:09-CV-2214 KJM EFB, 2014 WL 1379861, at *6 (E.D. Cal.
Apr. 8, 2014), order corrected, 2015 WL 925707 (E.D. Cal. Mar. 3, 2015)).  If the settlement
reflects a reasonable compromise over a bona fide dispute, the district court may approve the
settlement in order to promote the policy of encouraging settlement of litigation.  Nen Thio, 14
F.Supp.3d at 1340; Kerzich, 335 F.Supp.3d at 1185.

## III.

### THE PROPOSED SETTLEMENT AGREEMENT

Pursuant to the proposed settlement agreement, Defendant City of Merced shall pay a
total of $250,000.00 to settle the action, inclusive of attorneys' fees and costs.  (Settlement
Agreement and Release of Claims (hereafter "Settlement Agreement") ¶ 2(A), Messing Decl.,
Ex. 1, ECF No. 42-3 at 19-37.)   A total of $106,119.00 is allocated to pay damages to the
plaintiffs.  (Id. at ¶ 2(C).)  Attorneys' fees will be paid in the amount of $106,984.23 for services
rendered in the action, and costs will be paid in the amount of $36,896.77, for a total of
$143,881.00 in total fees and costs to be paid to the law firm of Plaintiffs' counsel.  (Id. at ¶
2(D).)

Each collective action member agrees to dismiss with prejudice his or her claims in the
action.  (Settlement Agreement at ¶ 3.)  The Settlement Agreement applies to any complaint,

claim, grievance or charge for FLSA overtime compensation related to the action, filed with any state or federal court, with any administrative body, agency, board, commission, or other entity. (Id.)  Plaintiffs are releasing all claims, known or unknown, arising out of the matters raised in this action including all claims made in this lawsuit for unpaid overtime, liquidated damages and attorneys' fees and costs that have occurred up to and including the effective date of the Settlement Agreement.  (Id. at ¶ 4.)  The parties proffer that the seventy-five (75) Plaintiffs have signed an individual signature page or acknowledgement agreeing to the terms of the Settlement Agreement.  (Mot. 9; Messing Decl. ¶ 29, Exs. 1-2, ECF No. 42-3 at 27-32, 38-107.)[4]

## IV.

## ANALYSIS AND DISCUSSION

### A.      Whether the Collective Action Should be Certified

On June 20, 2019, pursuant to the parties' stipulation and following the filing of supplemental briefing on the matter, District Judge Lawrence J. O'Neill conditionally certified this action as a collective action under 29 U.S.C. § 216(b) for the purpose of facilitating notice, and appointed Plaintiff Nathaniel McKinnon as collective action representative and Messing Adam and Jasmine LLP as counsel for the collective.  (ECF No. 33.)  The Court found the "FLSA collective action group shall consist of all current and former non-exempt employees of the City who worked without regard to holidays, received holiday in lieu payments, and worked statutory overtime within the same work period they received holiday in lieu pay at any time from the earlier of 1) three years prior to the date each individual first appeared in the action as a plaintiff or 2) three years prior to May 22, 2019, for each individual who receives a collective action notice and opts in during the agree upon opt-in period, and excluding current and former members of the City's Fire Unit."  (ECF No. 33 at 1-2.)

The Court now turns to the question of whether the collective action should be certified for purposes of settlement.

---

[4]  Of note, however, while the Settlement Agreement specifies attorneys' fees and costs in the amount of $143,881.00, the individual release acknowledgement pages state that attorneys' fees and costs total $143,015.77. (ECF No. 42-3 at 23, 38-107.)  The Court addresses this issue below, infra Section IV(C)(1), (4), (5).

Determining whether a collective action is appropriate is within the discretion of the district court.  Leuthold v. Destination Am., Inc., 224 F.R.D. 462, 466 (N.D. Cal. 2004).  To certify a FLSA collective action, the court must evaluate whether the proposed lead plaintiffs and the proposed collective action group are "similarly situated" for purposes of U.S.C. § 216(b).  Id.  The Ninth Circuit has held that "plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims."  Campbell v. City of Los Angeles, 903 F.3d 1090, 1117 (9th Cir. 2018).  While it is unclear what standard should be used to determine if the employees are similarly situated under the FLSA, given that the employee consents to participating in the FLSA action, courts do find that "[t]he requisite showing of similarity of claims under the FLSA is considerably less stringent than the requisite showing under Rule 23 of the Federal Rules of Civil Procedure."  Hill v. R+L Carriers, Inc., 690 F.Supp.2d 1001, 1009 (N.D. Cal. 2010) (citation omitted); accord Millan v. Cascade Water Servs., Inc., 310 F.R.D. 593, 607 (E.D. Cal. 2015).  Plaintiffs are similarly situated and can proceed as a collective action where they allege a single, FLSA-violating policy and argue a common theory of defendants' statutory violations.  See Senne v. Kansas City Royals Baseball Corp., 934 F.3d 918, 949 (9th Cir. 2019).

Federal courts generally use a two-step approach to determine whether to allow a collective action to proceed.  Tijero v. Aaron Bros., Inc., 301 F.R.D. 314, 323 (N.D. Cal. 2013).  Initially, the court determines whether the potential class members should receive notice of the action, and "plaintiffs can satisfy their burden to show that they are 'similarly situated' by making substantial allegations, supported by declarations or discovery, that 'the putative class members were together the victims of a single decision, policy, or plan.' "  Nen Thio, 14 F.Supp.3d at 1340 (citations omitted).  The determination is "based on a fairly lenient standard, and typically results in conditional certification."  Id.  The second certification decision is usually made at the close of discovery, typically when the defendant brings a motion to decertify the class, and then courts "apply a stricter standard for similarly situated employees and review several factors, including whether individual plaintiffs' claims involve disparate factual or employment settings; the various defenses available to the defendant which appear to

1  be individual to each plaintiff; as well as fairness and procedural considerations." Nen Thio, 14
2  F.Supp.3d at 1341.

3       In Campbell, the Ninth Circuit declined to adopt two common approaches used by
4  courts to decertify a collective action: (1) a minority approach that the Ninth Circuit opined was
5  "founded on an untenable analogy to class action practice and Rule 23," and (2) a majority
6  approach described as the ad hoc test, "at least as it is typically articulated—because it
7  inadequately accounts for the meaning of 'similarly situated' in the FLSA context and
8  improperly sanctions the decertification of collective actions the district court finds procedurally
9  challenging." Campbell, 903 F.3d at 1117 ("In effect, using the ad hoc test, with its focus on
10 differences rather than similarities among the party plaintiffs, improperly led the district court
11 into an approach that treats difference as disqualifying, rather than one that treats the requisite
12 kind of similarity as the basis for allowing partially distinct cases to proceed together.").

13      The Ninth Circuit found the district court may be able to decertify where conditions
14 make the collective mechanism truly infeasible, but it cannot reject the party plaintiffs' choice
15 to proceed collectively based on its perception of likely inconvenience. Campbell, 903 F.3d at
16 1117. The Court did not identify the method that should be used to decertify a collective action
17 stating that it did "not intend to preclude the district courts from employing, if they wish, a
18 version of the ad hoc test modified so as to account for the flaws we have identified. Nor do we
19 intend to preclude the district courts from employing any other, differently titled or structured
20 test that otherwise gives full effect to our understanding of section 216(b)." Id. at 1117 n.21.
21 Plaintiffs have the burden at all stages of litigation of proving they meet the "similarly situated"
22 requirement. Vasquez v. Coast Valley Roofing, Inc., 670 F.Supp.2d 1114, 1123–24 (E.D. Cal.
23 2009).

24      Here, since the parties have previously stipulated to conditionally certify the collective
25 action as approved by the District Judge, and no motion for decertification has been made by
26 the Defendant, the Court considers certification using the fairly lenient standard utilized in the
27 first step. Nen Thio, 14 F.Supp.3d at 1340. In this instance, all members of the collective
28 action are either current or former non-exempt employees employed by the City in its Police

Department, or as refuse equipment operators.  (Mot. 12.)  Plaintiffs allege that they were all subjected to the same policy which deprived them of overtime by failing to include holiday-in-lieu in their regular rate of pay.[5]

The Court finds that the policy alleged to have violated the FLSA is a department-wide policy to which all Plaintiffs were subjected, which supports finding that the employees are similarly situated under the FLSA.  See Campbell, 903 F.3d at 1120.  The Court finds that the Plaintiffs are similarly situated under the FLSA and recommends the action be certified to proceed as a collective action for purposes of settlement.

### B.    Whether a Bona Fide Dispute Exists

A bona fide dispute exists where there are legitimate questions about the existence and extent of a defendant's liability and there is some doubt that the plaintiffs would succeed on the merits of their FLSA claims in the litigation.  Selk, 159 F.Supp.3d at 1172.  "If there is no question that the FLSA entitles plaintiffs to the compensation they seek, then a court will not approve a settlement because to do so would allow the employer to avoid the full cost of complying with the statute."  Id.

The parties argue that settlement of this action resolves several bona fide disputes regarding the existence and extent of Defendant's liability.  These proffered disputes are: (1) the treatment of holiday-in-lieu pay, which has not been addressed by the Ninth Circuit; (2) the methodology to be used to calculate the regular rate of pay; (3) whether Plaintiffs are entitled to liquidated damages; and (4) the limitations period that applies to Plaintiffs' claims.  (Mot. 13.)

### 1.    Treatment of Holiday-In-Lieu Pay

The parties argue that it is clear a bona fide dispute exists between the parties over Defendant's potential liability under the FLSA as the parties disagree regarding whether it was required for Defendant to include holiday-in-lieu pay in the regular rate for the purposes of calculating overtime under the FLSA.  (Id.)

---

[5]  Plaintiffs note that while there is a difference between the Police Department employee Plaintiffs and the refuse equipment operator Plaintiffs because the latter are required to work on fewer designated holidays than the former group, this only involves the amount of damages and the practice of not including HIL pay in calculating overtime is the same for both groups.  (Mot. 13; Messing Decl. ¶ 11.)

1    The parties proffer that the treatment of holiday-in-lieu pay under the FLSA has not been

2    addressed by the Ninth Circuit and the issue of whether "in-lieu" benefits must be included in the

3    "regular rate" is currently being, or has recently been, litigated in numerous California District

4    courts, <u>Aboudara, et al. v. City of Santa Rosa</u>, Case No. 4:17-cv-01661-HSG (N.D. Cal.)

5    (settlement agreement approved May 10, 2019); <u>Lewis, et al. v. County of Colusa</u>, Case No.

6    2:16-cv-01745-VC (E.D. Cal.) (closed July 10, 2019 due to settlement); <u>Goddard, et al. v. City of

7    Cathedral City</u>, Case No. 5:19-cv-00482-PSG-SHK (C.D. Cal.) (filed March 18, 2019); <u>Burris v.

8    City of Petaluma</u>, Case No. 4:18-cv-02102-HSG (N.D. Cal.) (order granting stipulation for

9    approval of settlement agreement June 28, 2019); <u>Valentine v. Sacramento Metro. Fire Dist.</u>, No.

10   2:17-CV-00827-KJM-EFB, 2019 WL 651654, at *3 (E.D. Cal. Feb. 15, 2019) (granting motion

11   for approval of settlement agreement).  (Mot. 13-14.)

12   The parties highlight that while some courts have held that holiday-in-lieu pay must be

13   included in the regular rate of pay, the Department of Labor ("DOL") recently issued a final rule

14   addressing the regular rate under the FLSA.  The rule, issued on December 16, 2019, provides in

15   relevant part:

16   > Current Department regulations support excluding holiday-in-lieu pay from the
   > regular rate.  Under 29 CFR 778.219, where an employee forgoes his or her
17   > holiday and works, and is paid for his or her normal work plus an additional
   > amount for the holiday, the additional amount paid for working the holiday is not
18   > included in the regular rate.  The Department applied this principle in a 2006
   > opinion letter concluding that holiday-in-lieu pay could be excluded from the
19   > regular rate where the employer provided nine "recognized" holidays and two
   > "floating" holidays paid in a lump sum, and on occasion when employees forgo a
20   > holiday and work they received both pay for the hours worked and holiday pay.
   > The Department notes that it does not matter whether the employee voluntarily
21   > forgoes the holiday to work or is required to work the holiday by the schedule set
   > for the employee.  Nothing in this regulation makes the excludability of such
22   > payments dependent on the employee having the option to work or not work on
   > the holiday.  All that is required for the holiday-in-lieu pay to be excludable is that
23   > the employee is paid an amount for the holiday, in addition to being paid for his
   > hours worked on the holiday.

24

25   Regular Rate Under the Fair Labor Standards Act, 84 FR 68736-01 (Dec. 16, 2019).  To clarify

26   the regulation, the following example involving employees who work a set schedule irrespective

27   of holidays was added to 29 C.F.R. § 778.219(a):

28   An employee is scheduled to work a set schedule of two 24–hour shifts on duty,

> followed by four 24–hour shifts off duty.  This cycle repeats every six days.  The employer recognizes ten holidays per year and provides employees with holiday pay for these days at amounts approximately equivalent to their normal earnings for a similar period of working time.  Due to the cycle of the schedule, employees may be on duty during some recognized holidays and off duty during others, and due to the nature of their work, employees may be required to forgo a holiday if an emergency arises.  In recognition of this fact, the employer provides the employees holiday pay regardless of whether the employee works on the holiday.  If the employee works on the holiday, the employee will receive his or her regular salary in addition to the holiday pay.  In these circumstances, the sum allocable to the holiday pay may be excluded from the regular rate.

29 C.F.R. § 778.219(a)(4).

Further, the parties emphasize that the parties have opposing positions regarding the adjudicated motion to dismiss in this matter.  Plaintiffs take the position that in denying Defendant's motion to dismiss, Judge O'Neill made the legal determination that holiday-in-lieu pay may not be excluded under 29 U.S.C. § 270(e)(2), and this ruling is subject to the law of the case doctrine.  (Mot. 15; Messing Decl. ¶ 19.)  On the other hand, Defendant contends that under Judge O'Neill's ruling, compensation only needs to be included in the regular rate when an employee actually works the holiday, and the issue may be reconsidered in light of the newly issued regulation.  (Id.)  The parties argue that the recently issued DOL regulations highlighted above have bolstered the bona fide dispute between the parties as to whether the City was required to provide holiday-in-lieu pay in the regular rate.

Based on the above facts, the Court finds the parties have a bona fide dispute regarding whether Defendant was required to include holiday-in-lieu pay in the regular rate for the purposes of calculating overtime under the FLSA.

### 2.     Methodology to Calculate Rate of Pay

Additionally, the parties dispute the method to calculate damages if Plaintiffs were to prevail in this action.  Plaintiffs contend that damages should be calculated using the method prescribed by 29 C.F.R. § 778.113, while Defendant contends that the correct method is set forth in 29 C.F.R. § 778.110(b).  (Mot. 15; Messing Decl. ¶ 19; Decl. Michael Youril Supp. Joint Mot. Approval FLSA Settlement ("Youril Decl.") ¶ 7, ECF No. 42-5 at 1.)

Section 778.113 applies to salaried employees in general.  For employees paid other than

by workweek, subsection (b) provides:

> A monthly salary is subject to translation to its equivalent weekly wage by multiplying by 12 (the number of months) and dividing by 52 (the number of weeks). A semimonthly salary is translated into its equivalent weekly wage by multiplying by 24 and dividing by 52 . . . [t]he parties may provide that the regular rates shall be determined by dividing the monthly salary by the number of working days in the month and then by the number of hours of the normal or regular workday.

29 C.F.R. § 778.113(b). Once a weekly rate is arrived at, the "regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113(a).

On the other hand, under section 778.110(b) which applies to hourly rate employees, the bonus is added to the period for which the compensation applies and the total amount of compensation is divided by the number of hours worked to arrive at the hourly rate. 29 C.F.R. § 778.110(b) ("If the employee receives, in addition to the earnings computed at the $12 hourly rate, a production bonus of $46 for the week, the regular hourly rate of pay is $13 an hour (46 hours at $12 yields $552; the addition of the $46 bonus makes a total of $598; this total divided by 46 hours yields a regular rate of $13.").

The parties proffer that if Defendant prevailed and their method was adopted, Plaintiffs' claims would be reduced by over sixty-six percent (60%). (Mot. 15-16; Messing Decl. ¶ 20; Youril Decl. ¶ 8.)

Based on these facts, the Court finds a bona fide dispute exists between the parties as to the proper method to calculate the amount of wage damages in this action.

3.   Liquidated Damages

The parties also dispute whether Plaintiffs would be entitled to liquidated damages. Under 29 U.S.C. § 216(b), an employer who violates the minimum wage or overtime provisions of the FLSA can be liable for an equal amount of liquidated damages in addition to the unpaid wages due. Under 29 U.S.C. § 260, an employer has a defense to liquidated damages where the employer acted in good faith and had reasonable grounds for believing that the act or omission was not a violation of the FLSA. 29 U.S.C. § 260 ("[I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had

reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title."); see also Local 246 Util. Workers Union of Am. v. S. California Edison Co., 83 F.3d 292, 297 (9th Cir. 1996) ("Under 29 U.S.C. § 260, the employer has the burden of establishing subjective and objective good faith in its violation of the FLSA.  If the employer fails to carry that burden, liquidated damages are mandatory.").

Plaintiffs contend that Defendant cannot establish that it acted in good faith based on the numerous court decisions addressing the exclusion of holiday-in-lieu pay.  (Mot. 16; Messing Decl. ¶¶ 12, 13, 21.)    Defendant takes the counter position that the prior rulings are distinguishable and the lack of Ninth Circuit guidance on the exclusion of holiday-in-lieu pay renders recovery of liquidated damages uncertain.  (Mot 16; Youril Decl. ¶¶ 8-9.)  Defendant further asserts that its position was consistent with a 2006 DOL opinion letter finding that holiday in lieu pay was not to be included in the regular rate of pay.  (Mot. 16; Def.'s Mot. Dismiss, ECF No. 8-1 at 8.)

Given these proffered counter positions taken by the parties, the Court finds a bona fide dispute exists as to whether Plaintiffs are entitled to liquidated damages should they prevail in this action.

### 4.    Limitations Period and Willfulness

Finally, the parties dispute whether any alleged violation of the FLSA would be willful and the impact of that fact on the limitations period.  Generally, the limitations period for any cause of action to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages under the FLSA is two years after the cause of action accrued.  29 U.S.C. § 255(a). However, where the violation arises out of a willful violation of the FLSA, the action may be commenced within three years after the cause of action accrued.  Id. ("[E]very such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.").  The parties contend that if it was found that the conduct of

Defendant was not willful then Plaintiffs would be precluded from recovering damages beyond two years prior to filing this action.

Based on the parties' opposing positions regarding whether Defendant's conduct was willful, the Court finds a bona fide dispute exists over such fact and which limitations period is applicable to this action.

5.   The Court Finds Multiple Bona Fide Disputes Between the Parties

As concluded in the previous four subsections, the Court finds that bona fide disputes exist between the parties as to whether there was a violation of the FLSA, the method for calculating damages, whether liquidated damages could be recovered in this action, and whether Defendant's conduct was willful and the related impact on the appropriate statute of limitations. Accordingly, this factor weighs in favor of approving the parties' proposed settlement.

**C.    Whether the Proposed Settlement is Fair and Reasonable**

Having found that a bona fide dispute exists, the Court considers whether the settlement is fair and reasonable.

The parties agree that the factors identified in <u>Selk</u> should be used to determine whether the settlement is fair and reasonable.  In <u>Selk</u>, the court acknowledged that "many courts begin with the well-established criteria for assessing whether a class action settlement is 'fair, reasonable, [and] adequate' under Fed. R. Civ. P. 23(e), and reason by analogy to the FLSA context."  <u>Selk</u>, 159 F.Supp.3d at 1173.  While the court found the approach to be "generally sound," to avoid the "risk of not giving due weight to the policy purposes behind the FLSA," the court adopted a "totality of circumstances approach that emphasizes the context of the case and the unique importance of the substantive labor rights involved," which "replicates the factors relevant to Rule 23 class actions where appropriate, but adjusts or departs from those factors when necessary to account for the labor rights at issue."  <u>Id.</u> (citations omitted).  The <u>Selk</u> court ultimately considered the following factors: "(1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the

possibility of fraud or collusion." <u>Id.</u>  "In considering these factors under a totality of the circumstances approach, a district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." <u>Id.</u>

The Court now turns to these six factors as applied to the particular facts of this case and the proposed settlement.

### 1.   Possible Range of Recovery

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." <u>Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc. ("DIRECTV")</u>, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (applying to Rule 23 settlement) (quoting 5 Moore Federal Practice, § 23.85[2][b] (Matthew Bender 3d. ed.)).  "When evaluating the strength of a case, the Court should 'evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements.' " <u>Millan</u>, 310 F.R.D. at 610 (quoting <u>Adoma v. Univ. of Phoenix, Inc.</u>, 913 F.Supp.2d 964, 975 (E.D. Cal. 2012)).  "The amount offered in settlement is generally considered to be the most important considerations of any class settlement." <u>Millan</u>, 310 F.R.D. at 611.  The range of possible approval criteria focuses on "substantive fairness and adequacy," and "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." <u>Vasquez</u>, 670 F.Supp.2d at 1125 (quoting <u>In re Tableware Antitrust Litig.</u>, 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007)).

The district court is to evaluate the potential range of recovery to ensure that the settlement amount agreed to bears some reasonable relationship to the true settlement value of the claims. <u>Selk</u>, 159 F.Supp.3d at 1174; <u>see</u> <u>also</u> Millan, 310 F.R.D. at 611 ("To determine whether that settlement amount is reasonable, the Court must consider the amount obtained in recovery against the estimated value of the class claims if successfully litigated.").  "[I]n comparing the amount proposed in the settlement with the amount that plaintiffs could have obtained at trial, the court must be satisfied that the amount left on the settlement table is fair and reasonable under the circumstances presented." <u>Selk</u>, 159 F.Supp.3d at 1174.  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se

1   render the settlement inadequate or unfair." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459

2   (9th Cir. 2000), as amended (June 19, 2000) (quoting Officers for Justice v. Civil Serv. Comm'n,

3   688 F.2d 615, 628 (9th Cir. 1982)).   "Even a fractional recovery of the possible maximum

4   recovery amount may be fair and adequate in light of the uncertainties of trial and difficulties in

5   proving the case." Millan, 310 F.R.D. at 611.

6           In the joint motion for approval of the settlement, Plaintiffs assert that the amount offered

7   to settle this action is near the maximum range for Plaintiffs' recovery at trial.   Plaintiffs' counsel

8   estimated that based on the calculations of Plaintiff's retained damages expert, that a "best case

9   scenario" (damages to include liquidated damages and based on a three year statute of

10  limitations) for a gross damages recovery at trial would be $211,254.00, consisting of

11  $105,627.00 in wages, and $105,627.00 in liquidated damages.   (Mot. 17-18; Messing Decl. ¶

12  27.)   The parties argue that this amount did not take into account reductions for offsets for such

13  things as contractual overtime or paid leaves of absence that would reduce hours actually worked

14  below the threshold for overtime compensation.   (Mot. 18; Messing Decl. ¶ 27.)   Additionally, if

15  liquidated damages were not awarded at trial, the amount of estimated damages ($105,627.00 in

16  wages) could actually be less than the damages that will be paid pursuant to the proposed

17  settlement ($106,119.00).   (Mot. 18.)   Further, the parties contend that if there was a

18  determination that the Defendant's conduct was not willful, the damage recovery would be based

19  on a two year period instead of a three year period, which would also reduce the potential

20  amount of recoverable wages.   (Mot. 18.)   Finally, as discussed above, there remains the

21  potentiality that based on the DOL interpretation of regular rate of pay, a finding of no liability

22  could result if this matter proceeded to trial.   (Id.)

23          Defendant calculated that damages in this action would be approximately $40,094.00,

24  including liquidated damages.   (Mot. 18; Messing Decl. ¶ 27; Youril Decl. ¶ 10.)   This amount

25  was arrived at based on the actual hours worked and a 0.5 premium.   (Mot. 18; Youril Decl. ¶

26  10.)   Defendant's counsel proffers that the calculation "also included favorable assumptions,"

27  specifically, the rate used was the 2018-2019 fiscal year compensation, which was a two and a

28  half percent (2.5%) increase over the previous two years, and the City also included hours

16

1    worked on mutual aid assignments.   (Id.)   Defendant believes this is close to or above the

2    maximum range of recovery.  (Id.)

3         The parties argue that based on the estimated "base case" scenario for damages

4    recoverable at trial, as well as the uncertainties that the full (or any) amount of damages would

5    be recovered at trial, the amount offered in settlement weighs in favor approving the settlement

6    agreement.  (Mot. 19; Messing Decl. ¶ 29.)  Here, each Plaintiff will receive damages based

7    upon the number of statutory overtime hours worked over the three years prior to the individual

8    Plaintiff's opt in date and the amount of holiday-in-lieu pay earned, subject to a minimum total

9    damages payment of $100.00.[6]  (Mot. 19; Messing Decl. ¶ 30.)

10        Before turning to the terms of the settlement amount, the Court draws attention to facts

11   relevant to the parties' proffer that each Plaintiff was provided with the schedule of payments

12   showing the amount of compensation for damages that he or she would receive and accepted the

13   settlement and release terms.  (Mot. 19.)  As the Court noted above, while the Settlement

14   Agreement specifies attorneys' fees and costs in the amount of $143,881.00, the individual

15   release forms state that attorneys' fees and costs total $143,015.77.  (ECF No. 42-3 at 23, 38-

16   107.)  Specifically, the pages entitled: "ACKNOWLEDGEMENT OF SETTLEMENT AND

17   RELEASE OF CLAIMS INDIVIDUAL SIGNATURE PAGE," provide that:

18             . . . By signing below, I hereby acknowledge that I understand and agree to
          the terms and conditions contained in this Settlement Agreement and Release, as
19        set forth in the above eleven (11) pages.
              I understand that my attorneys, Messing Adam & Jasmine, have
20        negotiated a settlement with the City to resolve my claim in this case.  I
          understand that the City's payment of $143,015.77 in attorney fees and costs to
21        Messing Adam & Jasmine, as well as the total payment issued to me, constitute a
          full and complete settlement of all my claims against the City in the action . . . I
22        accept this settlement as fair and reasonable.  Having had an opportunity to
          review the materials accompanying the Settlement Agreement and Release, and
23        also having been afforded the opportunity to consult with counsel, I voluntarily
          enter into this Settlement Agreement and Release and hereby completely release
24        the City per the waiver of rights in this Settlement Agreement and Release.

25   (ECF No. 42-3 at 27-32, 37-107.)

---

26   [6]  The parties note that the amount of estimated actual damages for a few Plaintiffs was below $100.00, and it was
     decided to increase the amount for each of these individuals to $100.00.  (Mot. 19.)  The total amount of these
27   additional payments is less than $500.00 was provided from the funds that would have been allocated to attorneys'
     fees.  (Id.)  Thus, the parties emphasize that no amount payable to any other Plaintiff was reduced to provide for
28   payment of this additional amount.  (Id.; Messing Decl. ¶ 30.)

While it appears the individual acknowledgement pages contained an incorrect amount of total attorneys' fees and costs, the acknowledgement incorporates and references the previous 11 pages of the Settlement Agreement, including the sections delineating the total settlement amount and payment for attorneys' fees and costs, as well as Attachment A which specifically breaks down the amount of payments to be made to each individual Plaintiff for wages and liquidated damages.  (ECF No. 42-3 at 22-23, 34-36.)  The Court raised this issue at the hearing on the motion, and Plaintiffs' counsel confirmed that while the total attorneys' fees and costs as reflected on the individual acknowledgment pages may have been incorrect as ultimately calculated and as reflected in the main pages of the settlement agreement, the individual Plaintiffs' personal amount of damages they were to receive was calculated independently and would not have been changed or impacted by the discrepancy between the amount contained in the main agreement, and the amount reflected in the individual acknowledgment page.

Although this inconsistency is exists in the record, the Court finds it most significant that each individual Plaintiff was informed of the specific amount of damages they would be receiving in Attachment A and were provided with the primary pages of the agreement that contained the correct calculations.  The acknowledgement page expressly stated the individual acknowledged, understood, and agreed to the terms and conditions contained in the settlement agreement, "as set forth in the above eleven (11) pages." (ECF No.  42-3 37-107.)  Further, the acknowledgement page did not reference the total amount of the settlement fund ($250,000.00) nor the individual allotment, but instead only stated the signer agreed that the Defendant's payment of attorneys' fees and costs to counsel, in conjunction with the payment to the individual signer, constituted a complete settlement of all claims in this action.   (Id.) Hypothetically, even if the inconsistency had appeared elsewhere in the agreement, the difference in attorneys' fees would be a relatively *de minimis* amount when compared to the total settlement amount and when spread throughout the seventy-five individual Plaintiffs.

Turning to the settlement amount as a whole, given the uncertainties in the parties' respective methods of calculating damages, that the amount offered in settlement is approximately fifty percent (50%) of the "best case" amount of damages calculated by Plaintiffs'

retained damages expert ($106,119.00 versus $211,254.00), and that each Plaintiff has approved their individual settlement apportionment, the Court finds that the amount offered to settle this action is fair and reasonable.  Accordingly, the amount offered in settlement weighs in favor of approving the settlement agreement.

2.    <u>Stage of the Proceedings and Amount of Discovery Completed</u>

The Court next considers the stage of the proceedings and the amount of discovery that has been completed.  Where evidence is presented that a considerable amount of discovery has been conducted, such fact weighs in favor of settlement "because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case."  <u>Millan</u>, 310 F.R.D. at 610 (quoting <u>Adoma</u>, 913 F.Supp.2d at 977).  "A settlement occurs in an advanced stage of the proceedings indicates that the parties have carefully investigated the claims before reaching a resolution," and weighs in favor of approving settlement.  <u>Ontiveros v. Zamora</u>, 303 F.R.D. 356, 371 (E.D. Cal. 2014).

The parties proffer that they have engaged in sufficient formal and informal discovery to form an adequate determination of the merits of the action prior to reaching the proposed settlement.  (Mot. 20.)  Defendant has produced extensive records related to the hours worked for each Plaintiff and the compensation paid.  (<u>Id.</u>; Messing Decl. ¶ 22; Youril Decl. ¶ 5.)

The scheduling order setting the discovery deadlines was issued on February 6, 2019, and set the non-expert discovery deadline for May 7, 2020.  (ECF Nos. 25, 26.)  The parties participated in a mediation session on February 3, 2020.  (Messing Decl. ¶ 26.)  The parties filed a notice of settlement on May 14, 2020, just after the close of the non-expert discovery deadline. (ECF No. 38.)

Here, Plaintiffs contend that sufficient discovery was conducted to obtain a full understanding of the damages that were at issue in this action prior to engaging in mediation. (Mot. 20; Messing Decl. ¶ 22.)  The parties proffer that they fully explored the legal issues that are raised by Plaintiffs' claims in this action.  (Mot. 20; Messing Decl. ¶ 18; Youril Decl. ¶ 11.)

The Court finds that the stage of the proceedings and the amount of discovery that was conducted weighs in favor of approving the settlement agreement.

### 3.     The Seriousness of the Litigation Risks Faced by the Parties

Plaintiffs argue that continued litigation would cause them harm by jeopardizing the relief that has already been secured on their behalf.  (Mot. 20.)   The parties dispute whether Defendant would be liable for the failure to include holiday-in-lieu pay in the regular rate.  (Id.; Messing Decl. ¶¶ 18-21; Youril Decl. ¶¶ 7-9.)   The parties contend that if Defendant was to prevail on the issue of liability, Plaintiffs would not obtain any recovery in this action, and emphasize that further, a jury could find that any violation was not willful or that the Defendant acted in good faith, which would significantly reduce any damages awarded.  (Mot. 20.)

The parties also emphasize that, as discussed above, the DOL's December 2019 Final Rule and the amendment of the statutory language to include an example stating that holiday in lieu pay is not to be included in the regular rate creates a reasonable doubt as to whether Plaintiffs could prevail in this matter.  (Mot. 20-21; Messing Decl. ¶ 19.)  In light of the risks and costs associated with continuing to litigate this matter, the parties argue settlement of this action with an immediate award to the collective members is preferable to continuing to litigate.  See Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 255 (N.D. Cal. 2015).

Based on these facts, the Court finds consideration of the future litigation risks weighs in favor of finding the settlement fair and reasonable.

### 4.     Scope of the Release Provision in the Settlement Agreement

The Court reviews the scope of any release provision in an FLSA settlement to ensure that the collective action members are not pressured to forfeit claims or waive rights that are unrelated to the litigation.  Selk, 159 F.Supp.3d at 1178.  "A FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself."  Seguin v. Cty. of Tulare, No. 1:16-CV-01262-DAD-SAB, 2018 WL 1919823, at *4 (E.D. Cal. Apr. 24, 2018) (quoting Slezak v. City of Palo Alto, No. 16-CV-03224-LHK, 2017 WL 2688224, at *4 (N.D. Cal. June 22, 2017)).  "The concern is that an expansive release of claims would effectively allow employers to use employee wages—wages that are guaranteed by statute—as a bargaining chip to extract valuable concessions from employees."  Selk, 159 F.Supp.3d at 1178.

Here, the parties proffer that through the settlement agreement, Plaintiffs are releasing all

claims, known or unknown, arising out of the matters raised in this action, including all FLSA claims made in this lawsuit for unpaid overtime, liquidated damages, and attorneys' fees that have occurred up to and including the effective date of the settlement agreement, which is the date of approval of the settlement agreement by the Court.  (Mot. 21; Settlement Agreement ¶ 4.) The parties agree that the release covers only those claims that arise from or are attributable to Plaintiffs' FLSA claims asserted in this action, and does not apply to any other claims that the Plaintiffs have or may have against the City.  (Id.)

Here, the settlement agreement releases all FLSA claims that have been or could have been raised in this lawsuit up to the effective date of the settlement.  The parties have agreed that only those claims that arise from or are attributable to Plaintiffs' FLSA claims in this action are being released.  The Court finds that the scope of the release weighs in favor of finding the settlement to be fair and reasonable.[7]

### 5.   Experience and Views of Counsel and Opinion of Participating Plaintiffs

Courts are to accord great weight to the recommendation of counsel because they are acutely involved with and aware of the facts of the litigation, and in a better position than a court to produce a settlement that fairly reflects the parties' expected outcome in the litigation. DIRECTV, 221 F.R.D. at 528.

In support of the settlement, the parties proffer that their counsel are experienced in litigating wage and hour claims and agree that the terms of the settlement agreement are fair and reasonable.  (Mot. 22; Messing Decl. ¶¶ 32, 49; Youril Decl. ¶ 10.)  Plaintiffs' primary counsel contends that the settlement amount is within the maximum range that Plaintiffs could expect to recover were they to proceed to trial.  (Messing Decl. ¶¶ 27, 30-33.)  Plaintiffs' primary counsel has over forty (40) years of experience in litigating wage and hour actions, including FLSA actions.  (Messing Decl. ¶¶ 4-8.)  The primary counsel representing Defendant, Michael Youril and Jesse Maddox, have seven and seventeen years of experience respectively in litigating labor

---

[7] To the extent it is relevant to the Plaintiff's awareness of the precise terms of the settlement agreement and such impact on the fairness of the terms of the release provision, the Court incorporates the discussion above, supra Section IV(C)(1), regarding the incorrect calculation of attorneys' fees and costs reflected in the acknowledgement pages.

and employment law matters, including FLSA matters.  (Youril Decl. ¶ 2.)

The parties argue that given counsels' experience in this field, their assertions that the settlement is fair and reasonable supports final approval of the settlement, Bellinghausen, 306 F.R.D. at 257.  (Mot. 22.)  Additionally, the parties emphasize that each Plaintiff has been provided with a copy of the settlement agreement, had the opportunity to review it, and voluntarily agreed to the terms of the agreement.  (Id.; Messing Decl. ¶ 34.)

Based on the experience and views of counsel, along with the fact that the Plaintiffs each reviewed and agreed to the terms of the settlement agreement,[8] the Court finds this factor weighs in favor of finding the settlement agreement to be fair and reasonable.

### 6.     Risk of Collusion or Fraud

The parties assert that the settlement was reached through arms-length negotiations and there has been no collusion or fraud.  In evaluating the settlement, the court must ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties."  Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 453 (E.D. Cal. 2013) (quoting Officers for Justice, 688 F.2d at 625).  "[I]t is appropriate for the court to consider the procedure by which the parties arrived at their settlement to determine whether the settlement is truly the product of arm's length bargaining, rather than the product of collusion or fraud."  Millan, 310 F.R.D. at 613.

The parties contend they engaged in extensive arm's length settlement negotiations, including a full day mediation with a professional mediator experienced in FLSA collective action disputes.  (Mot. 23; Youril Decl. ¶ 5; Messing Decl. ¶¶ 26-28, 31.)  The parties argue that the fact that the parties participated in mediation prior to agreeing to a settlement in this action "tends to support the conclusion that the settlement process was not collusive."  Millan, 310 F.R.D. at 613 (quoting Palacios v. Penny Newman Grain, Inc., 2015 WL 4078135 (E.D. Cal. July 6, 2015)).

---

[8]  The Court incorporates the discussion above, supra Section IV(C)(1), regarding the incorrect calculation of attorneys' fees and costs reflected in the acknowledgement pages.

1      Given there is no apparent indication that the settlement was the result of collusion or
2  fraud, and based on the course of litigation and record of negotiations and mediation, the Court
3  finds the settlement was reached by arm's length bargaining.  Accordingly, this factor weighs in
4  favor of finding the settlement to be fair and reasonable.

5          7.      Consideration of the Selk Factors Weighs in Favor of Settlement

6      Generally, approval of a settlement that is not clearly inadequate is "preferable to lengthy
7  and expensive litigation with uncertain results."  DIRECTV, 221 F.R.D. at 526, Millan, 310
8  F.R.D. at 611.  As the Court found above, all of the factors to be weighed under the totality of
9  the circumstances test described in Selk favor finding the settlement to be fair and reasonable.
10  The Court is satisfied that the settlement's overall effect is to vindicate the policy goals and
11  purposes of the FLSA, and recommends that the settlement be approved as a fair and reasonable
12  resolution of a bona fide dispute.

13      **D.      Attorneys' Fees**

14      The FLSA provides for an award of attorneys' fees in a collective action.  29 U.S.C. §
15  216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or
16  plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the
17  action.").  Since the statute states that the court "shall" award a reasonable fee, the "award of an
18  attorney's fee is mandatory, even though the amount of the award is within the discretion of the
19  court."  Gary v. Carbon Cycle Arizona LLC, 398 F.Supp.3d 468, 485 (D. Ariz. 2019) (quoting
20  Houser v. Matson, 447 F.2d 860, 863 (9th Cir. 1971)).  The court must assess the reasonableness
21  of the attorneys' fee award when included in a proposed settlement of an FLSA claim.  Selk, 159
22  F.Supp.3d at 1180.

23      The parties have agreed that the settlement shall include $143,881.00 in total attorneys'
24  fees and costs, delineated as $106,984.23 in attorneys' fees, and $36,896.77 in costs.  (Settlement
25  Agreement ¶ 2(D), ECF No. 42-3 at 23.)  The attorneys' fee portion of $106,984.23 is
26  approximately 42.8% of the total $250,000.00 settlement fund.  The costs of $36,896.77
27  represent an additional approximately 14.8% percent of the settlement fund.

28      "In 'common-fund' cases where the settlement or award creates a large fund for

distribution to the class, the district court has discretion to use either a percentage or lodestar method." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998). The "lodestar" method is typically used in class actions brought under fee-shifting statutes, where the benefit received by the class is "often primarily injunctive in nature and thus not easily monetized." In re Bluetooth Headset Prod. Liab. Litig. ("In re Bluetooth"), 654 F.3d 935, 941 (9th Cir. 2011).

### 1.   Common Fund

Since the benefit to the class is easily calculated in a common-fund settlement, courts may award a percentage of the common fund rather than engaging in a "lodestar" analysis to determine the reasonableness of the fee request. In re Bluetooth, 654 F.3d at 942. In the Ninth Circuit, courts typically calculate twenty-five percent (25%) of the common fund as the "benchmark" for a reasonable fee award, providing adequate explanation in the record for any special circumstances that justify departure. Id. The usual range for common fund attorneys' fees are between twenty to thirty percent (20%-30%). Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002). While the benchmark figure can adjust upward or downward to fit the individual circumstances of a case, the deviation must be accompanied by a reasonable explanation of why the benchmark is unreasonable under the circumstances. Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 273 (9th Cir. 1989).

Here, attorneys' fees in the amount of $106,984.23 is approximately 42.8% of the total common fund, well above the typical benchmark of 25%. However, such amount is not out of the bounds of previous amounts of attorneys' fees approved as part of FLSA settlements, or awarded following judgment. See Flores v. TFI Int'l Inc., No. 12-CV-05790-JST, 2019 WL 1715180 (N.D. Cal. Apr. 17, 2019) (approving settlement of FLSA collective action for $1,850,000.00 in damages and $2,900,000.00 for attorneys' fees and costs, as while "far in excess of the 25 percent benchmark for common fund cases," was reasonable under the facts of the case, because the award was roughly 83 percent of counsel's lodestar, there was no indication that this is one of those cases where the lodestar method incentivized counsel to expend more hours than may be necessary, and because the purpose of the FLSA attorneys' fees "provision is to insure effective access to the judicial process by providing attorney fees for prevailing

plaintiffs with wage and hour grievances.") (quoting Fegley v. Higgins, 19 F.3d 1126, 1134 (6th Cir. 1994)); Summa v. Hofstra Univ., No. CV073307DRHARL, 2012 WL 13046732, at *3 (E.D.N.Y. Feb. 22, 2012) (approving FLSA settlement of $200,000.00 in damages, and $279,000.00 in attorneys' fees, noting "the fact that the requested attorneys' fees exceed the NSA does not render them unreasonable.") (citing Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 511 (S.D.N.Y. 2011) ("In FLSA cases, like other discrimination or civil rights cases, the attorneys' fees need not be proportional to the damages plaintiffs recover, because the award of attorneys' fees in such cases encourages the vindication of Congressionally identified policies and rights.")); Parks v. Eastwood Ins. Servs., Inc., No. SACV02-507GLTMLGX, 2005 WL 6007833 (C.D. Cal. June 28, 2005) (awarding $2,080,415.00 in fees and costs, reduced from requested $3,639,893.20, after parties settled FLSA and state law claims for $1,200,000.00, but disputed whether agreement waived fees and costs), aff'd in part, rev'd in part and remanded, 240 F. App'x 172 (9th Cir. 2007) (largely rejecting defendant's challenges to attorneys' fees award, but remanding for reconsideration of one timekeeper's fees "but only in respect to the issue of the multiplier based on preclusion of other employment," and remanding because plaintiffs conceded that applying the lodestar multiplier to costs was not appropriate.); Pehle v. Dufour, No. 2:06-CV-1889-EFB, 2014 WL 546115 (E.D. Cal. Feb. 11, 2014) (after bench trial on FLSA and California Labor code claims with damages award of $44,061.99, awarding attorneys' fees in the amount of $93,131.25 pursuant to lodestar analysis); Nolan v. City of Los Angeles, No. CV032190GAFAJWX, 2014 WL 12564127 (C.D. Cal. Feb. 10, 2014) (after approval of FLSA settlement agreement that deemed plaintiffs the prevailing party and awarded damages of $89,319.00, awarding $838,254.39 in attorneys' fees after lodestar reduction); Krouse v. Ply Gem Pac. Windows Corp., No. 3:10-CV-00111-HA, 2012 WL 3241678 (D. Or. Aug. 7, 2012) (following trial and judgment of $32,321.70, awarding $35,000 in attorneys' fees following lodestar reduction from request of $82,577.50).

Given the amount of attorneys' fees is well above the 25% benchmark, the Court now turns to perform a lodestar analysis cross-check to further determine the reasonableness of the fee amount.

1          2.      Lodestar Cross-Check

2          When applying the percentage of the common fund method in calculating attorney fees,

3    courts use the "lodestar" method as a cross-check to determine the reasonableness of the fee

4    request.  See Vizcaino, 290 F.3d at 1050.  "This amount may be increased or decreased by a

5    multiplier that reflects any factors not subsumed within the calculation, such as 'the quality of

6    representation, the benefit obtained for the class, the complexity and novelty of the issues

7    presented, and the risk of nonpayment.' "   Adoma, 913 F.Supp.2d at 981 (quoting In re

8    Bluetooth, 654 F.3d at 942).

9          The "lodestar" approach calculates attorney fees by multiplying the number of hours

10   reasonably expended by a reasonable hourly rate.  Gonzalez v. City of Maywood, 729 F.3d 1196,

11   1202 (9th Cir. 2013); Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008).

12   Generally, the Court would conduct a more cursory review of the attorneys' fee request in

13   addressing the settlement of a class action.  However, since Plaintiffs' request is well above the

14   Ninth Circuit benchmark, the Court will do a more detailed review in calculating the lodestar to

15   determine whether the amount requested is reasonable.

16          a.      **Hours Reasonably Expended**

17          Plaintiffs submitted billing records in support of the request for attorney fees.  (Mot. 25;

18   Messing Decl. ¶ 40, Ex. 3, ECF No. 42-3 at 108-170.)  Plaintiffs proffer that counsel have

19   expended 445.4 hours of attorney and law clerk time from August 16, 2018 to May 14, 2020.

20   (Mot. 25.)  Plaintiffs highlight that Plaintiffs' attorneys are not seeking payment for any fees

21   incurred after May 14, 2020, the date that the notice of settlement was filed with the Court,

22   including for time expended in filing the motion for approval of settlement that is the subject of

23   this order.[9]  (Id.)  Plaintiffs' counsel also emphasizes that this case involved seventy-five (75)

24   Plaintiffs and presented several challenging legal and factual issues with respect to liability and

25   damages, Moreno v City of Sacramento, 534 F.3d 1106, 1112 (9th Cir.2008) ("By and large, the

26   court should defer to the winning lawyer's professional judgment as to how much time he was

27   _____

28   [9]  To be clear, while the billing entries do end on May 14, 2020, there are significant billing entries for time
     expended on this motion for approval of settlement incurred before such date.  (ECF No. 42-3 at 164-70.)

required to spend on the case").  (Mot. 25; Messing Decl. ¶¶ 15, 17-24, 26-28, 40, 44.)

The following are the hours Plaintiffs proffer have been expended in this action and that are reflected in the computer timekeeping breakdown from the law firm:

| Name | Position | Deductions | Total Hours |
|------|----------|------------|-------------|
| Gary M. Messing | Partner | | 155.9 |
| Gregg M. Adam | Partner | | 5.2 |
| Jason A. Jasmine | Partner | | 4.7 |
| James Henderson, Jr. | Senior Counsel | | 224.4 |
| D. Paul Bird | Attorney | | 47.5 |
| Raul Jacobson | Law Clerk | | 7.7 |
| **All Timekeepers** | | | 445.4 |

(Messing Decl. ¶ 40, Ex. 3, ECF No. 42-3 at 108-170.)  The Court reviewed the time entries for the various attorneys and the law clerk and found no readily apparent unreasonable expenditures of time.  However, given the fact that the attorneys' fees are well beyond the benchmark, and exclusive of the substantial expert witness fees, the Court inquired into the reasonableness of the hours expended at the August 19, 2020 hearing on the motion.  Plaintiffs' counsel explained that the attorneys here in fact expended less time than in the similar case Englert, involving firefighters, however the attorneys here are more experienced and thus incorporated a higher rate overall, as discussed below, and thus resulted in comparable amounts of fees.  Counsel further explained this action was filed before Englert, and thus the Plaintiffs' attorneys in this action bore the initial brunt of moving the litigation forward including dealing with the motion to dismiss first in this action prior to Englert.  Further, this action presented issues that were not encountered in Englert, including the fact that the action involved all non-exempt employees other than firefighters, and thus counsel had to perform analysis to determine who would fit into the collective action; the Court required supplemental briefing on the collective action conditional certification; a difficult notification process with the city employees; and the fact that

1  police overtime calculations are more complicated than the firefighter calculations which were
2  only subject to one MOU, in addition to the different contract and holiday structure for the refuse
3  operators that were part of this action.  Finally, as discussed below, numerous difficulties were
4  encountered when working with the experts in analyzing the overtime calculations and
5  accounting records.

6      Accordingly, based upon review of the billing entries and additional explanation of the
7  expenditure of hours discussed at the hearing, the Court finds Plaintiffs have sufficiently
8  demonstrated the reasonable expenditure of 445.4 total hours of attorney and law clerk time.

9      **b.    Hourly Rate**

10     The lodestar amount is to be determined based upon the prevailing market rate in the
11 relevant community.  Blum v. Stenson, 465 U.S. 886, 896 (1984).  The "relevant legal
12 community" for the purposes of the lodestar calculation is generally the forum in which the
13 district court sits.  Gonzalez, 729 F.3d at 1205.  "To inform and assist the court in the exercise of
14 its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to
15 the attorney's own affidavits—that the requested rates are in line with those prevailing in the
16 community for similar services by lawyers of reasonably comparable skill, experience and
17 reputation."  Blum, 465 U.S. at 895 n.11.

18     In the Fresno Division of the Eastern District of California, across a variety of types of
19 litigation generally, attorneys with experience of twenty or more years of experience are awarded
20 $325.00 to $400.00 per hour, attorneys with ten to twenty years of experience are awarded
21 $250.00 to $350.00 per hour, attorneys with five to ten years of experience are awarded $225.00
22 to $300.00 per hour, and less than $200.00 per hour for attorneys with less than five years of
23 experience.  See In re Taco Bell Wage & Hour Actions, 222 F.Supp.3d 813, 839 (E.D. Cal.
24 2016) (noting attorneys in Fresno Division with twenty or more years of experience are awarded
25 $350.00 to $400.00 per hour, and attorneys with less than fifteen years of experience are awarded
26 $250.00 to $350.00 per hour); Garcia v. FCA US LLC, No. 1:16-CV-0730-JLT, 2018 WL
27 1184949, at *6 (E.D. Cal. Mar. 7, 2018) (awarding $400.00 per hour to attorney with nearly
28 thirty years of experience; $300.00 per hour to attorney with nearly fifteen years of experience;

1   $250.00 per hour to attorney with ten years of experience; $225.00 per hour to attorneys attorney

2   with five years of experience; and $175.00 per hour to attorney with less than five years of

3   experience); Mike Murphy's Enterprises, Inc. v. Fineline Indus., Inc., No. 1:18-CV-0488-AWI-

4   EPG, 2018 WL 1871412, at *3 (E.D. Cal. Apr. 19, 2018) (awarding attorney with over twenty

5   years of experience the $325.00 per hour requested, the $300.00 per hour requested by attorney

6   with nearly twenty years of experience, and attorney with seven years of experience the

7   requested $250.00 per hour); TBK Bank, SSB v. Singh, No. 1:17-CV-00868-LJO-BAM, 2018

8   WL 1064357, at *8 (E.D. Cal. Feb. 23, 2018), report and recommendation adopted, No.

9   117CV00868LJOBAM, 2018 WL 3055890 (E.D. Cal. Mar. 21, 2018) (awarding attorneys with

10  over thirty-five years of experience $400.00 per hour, attorney with twenty years of experience

11  $350.00 per hour; and attorney with ten years of experience $300.00 per hour); Phillips 66 Co. v.

12  California Pride, Inc., No. 1:16-CV-01102-LJO-SKO, 2017 WL 2875736, at *16 (E.D. Cal. July

13  6, 2017), report and recommendation adopted, No. 1:16-CV-01102-LJO-SKO, 2017 WL

14  3382974 (E.D. Cal. Aug. 7, 2017) (awarding attorney with twenty-years of experience $400.00

15  per hour); Roach v. Tate Publ'g & Enterprises, No. 1:15-CV-00917-SAB, 2017 WL 5070264, at

16  *10 (E.D. Cal. Nov. 3, 2017) (awarding attorney with sixteen years of experience $325.00 per

17  hour in copyright action); Sanchez w. Frito-Lay, Inc., No. 1:14-cv-00797-AWI-MJS, 2015 WL

18  4662636, at *18 (E.D. Cal. Aug. 5, 2015) (in a wage and hour class action finding reasonable

19  rate of $350.00 per hour for attorneys with more than twenty years of experience and $275.00

20  per hour for attorney with fourteen years of experience).

21          Recently, as cited in the parties' briefing, the undersigned approved attorneys' fees in a

22  similar FLSA action that totaled approximately thirty-one percent (31%) of the common fund,

23  and in performing a lodestar cross-check, found the corresponding rates of $450.00 per hour for

24  a partner with nineteen years of experience, $400.00 per hour for a senior associate attorney with

25  an unspecified amount of years of experience, a rate of $325.00 per hour for an associate with

26  eight years of experience, and a rate of $200.00 per hour for an attorney with five years of

27  experience, to be reasonable.   Englert, 2020 WL 2215749, at *13.   Plaintiffs argue that the

28  attorneys' fee award is reasonable under the lodestar calculation utilizing either the attorneys'

1  normal hourly rate or using the $450 per hour rate recently utilized by the undersigned in

2  Englert.  The Court notes that in Englert, the normal billing rate of the lead counsel was $695 per

3  hour before reducing to $450 per hour.  Id.

4          Plaintiffs emphasize that here, each of the attorneys involved have at least nineteen years

5  of experience, including: (1) nineteen (19) years of experience for attorney Jason Jasmine; (2)

6  more than twenty (20) years of experience for attorneys D. Paul Bird II, and Gregg M. Adam;

7  and (3) more than forty (40) years of experience for attorneys James W. Henderson, Jr., and Gary

8  M. Messing.  (Mot. 26-27; Messing Decl. ¶ 42; Decl. James W. Henderson, Jr. ("Henderson

9  Decl.") ¶ 3, ECF No. 42-4 at 1.)  Plaintiffs state that calculating the total time of attorney hours

10  (445.4) by the lodestar hourly rate of $450.00 per hour, "yields a total of attorney's fees of

11  $200,430, nearly $94,000 more tha[n] the amount sought in this motion ($106,984.23)."  (Mot.

12  27; Messing Decl. ¶ 42.)  Plaintiffs further state "the lodestar total is exclusive of the charges for

13  the time incurred by Raul Jacobson, the law clerk."  (Mot 27, n.10.)

14          However, Plaintiffs incorrectly *included* the 7.7 hours billed by the law clerk in the total

15  445.4 hours.  When excluding the law clerk time, the total time of attorney hours (437.7)

16  multiplied by an hourly rate of $450.00 per hour yields a total of $196,965.00 in fees, which is

17  $89,980.77 more than the amount of $106,984.23 sought in the motion.

18          Next, Plaintiffs argue the amount of requested fees is also significantly less than what

19  would have been charged using the firm's normal hourly rates, as outlined here:

20

| Name | Experience | Hourly Rate | Hours Billed | Total Fees |
|------|-----------|-------------|--------------|------------|
| Gary Messing | 40+ years | $395 | 155.9 | $61,580.50 |
| Greg Adam | 20+ years | $395 | 5.2 | $2,054.00 |
| Jason Jasmine | 19+ years | $375 | 4.7 | $1,762.50 |
| James Henderson | 40+ years | $375 | 224.4 | $84,150.00 |
| D. Paul Bird II | 20+ years | $340 | 47.5 | $16,150.00 |

| Raul Jacobson | N/A | $175[10] | 7.7 | $1,347.50 |
| --- | --- | --- | --- | --- |
| **TOTAL FEES** | | | | $167,044.50[11] |

(Mot. 27; Messing Decl. ¶ 40.)  The Court finds counsels' normal hourly rates to be reasonable rates to utilize in the lodestar calculation, and sees no compelling reason to adopt the higher proposed $450.00 rate.  C.f. Englert, 2020 WL 2215749, at *13 (finding $450 to be a reasonable rate, reduced from the attorney's customary rate of $695.00 per hour).

### c.    Lodestar Amount

Utilizing counsel's normal hourly rates as a reasonable rate and the hours reasonably expended, as shown in the calculations contained in the table in the previous subsection, the Court finds the lodestar amount to be $167,044.50.  Given this lodestar amount, the Court finds that the amount of attorneys' fees agreed to by the parties, $106,984.23, is reasonable.  Although it is above the benchmark at approximately 42.8% of the common fund, counsel obtained significant relief for the Plaintiffs in this action and are requesting less in attorneys' fees than the lodestar rate, which is presumptively a reasonable fee amount.  Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000).

However, before the Court turns to the costs of the action, the Court emphasizes that while it ultimately finds the total fees and costs to be reasonable as based on counsels' sufficient explanation, counsel are cautioned that when an accounting expert's services are utilized to the extent they were here, in a case that is at heart an adjudication of accounting records and applying damages calculations, attorneys' hours billed should normally and comparatively be

---

[10]  The Court accepts the law clerk rate.  See Rosenfeld v. U.S. Dep't of Justice, 904 F. Supp. 2d 988, 1002 (N.D. Cal. 2012) ("Plaintiff's requested rate of $100 per hour for student interns falls within the $100 to $260 range typically billed for interns and law clerks.").  However, the Court would not be out of bounds to reduce the law clerk's fee, given no additional information regarding their experience was provided.  See Roach v. Tate Publ'g & Enterprises, No. 1:15-CV-00917-SAB, 2017 WL 5070264, at *11 (E.D. Cal. Nov. 3, 2017) ("Considering that there is no information provided about the law clerk, the Court finds that $75.00 is a reasonable hourly rate for the law clerk.").  Such reduction would have a minimal impact on the ultimate lodestar analysis conducted herein.

[11]  The Court notes the parties' total calculation is different by $0.50 as the individual calculations by the parties were rounded up or down to the nearest whole dollar amount, and thus the parties' calculation for Gary Messing is $61,580.00, for Jason Jasmine is $1,763.00, and $1,347.00 for Raul Jacobson, for a grand total of $167,044.00

1   lessened to reflect that the accounting expert firm carried a major load of the litigation work,

2   particularly when in a pre-trial posture.  The Court is mindful of its role as a gatekeeper when

3   approving such settlements, and counsel for both Plaintiffs and Defendant should be particularly

4   mindful in the future as to the amount that is fair and reasonable not only for the employee

5   plaintiffs, but also for the taxpayers who ultimately fund these settlements with government

6   defendants.  Nonetheless, for all the reasons explained below and above, the Court accepts the

7   attorneys' fees and the costs as reasonable.  In the end, the public is paying the bill and the Court

8   suspect that the future will not allow for such flexibility when it comes to public funds.  The

9   parties should be mindful that when these cases exist to work collectively to reduce the

10  expenditure to the public, otherwise, other areas of government services may be impacted.

11  While this settlement takes these factors into account, a possible lesser expense may have been

12  accomplished by both sides.

13      However, the Court recommends attorneys' fees in the amount of $106,984.23 be

14  approved as part of the parties' settlement.

15      **E.    Litigation Costs**

16      The FLSA also provides for an award of costs.  29 U.S.C. § 216(b) ("The court in such

17  action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable

18  attorney's fee to be paid by the defendant, and costs of the action.").  "To support an expense

19  award, Plaintiffs should file an itemized list of expenses by category and the total amount

20  advanced for each category, allowing the Court to assess whether the expenses are reasonable."

21  Flores v. TFI Int'l Inc., No. 12-CV-05790-JST, 2019 WL 1715180, at *11 (N.D. Cal. Apr. 17,

22  2019).  Counsel must provide receipts to support their claimed expenses.  Flores, 2019 WL

23  1715180, at *11.

24      Counsel only broke down the amounts of costs by specifying mediation costs in the

25  amount of $3,250.00, $32,169.00 for expert costs, while proffering that the remaining balance of

26  the costs for "ordinary and regular court costs and litigation expenses" totals $1,477.77, for a

27  total claimed amount of costs of $36,896.77.  (Messing Decl. ¶ 47.)  Counsel did not further

28  breakdown the costs into itemized categories, and instead submitted a firm computer produced

itemization of each individual charge, but the documentation also does not show total amounts for each category. The Court has reviewed the computerized cost expense breakdown and has confirmed it reflects the following amounts of costs:

| Item | Cost |
|---|---|
| Filing Fee | $400.00 |
| Service of Process | $100.00 |
| Postage and Delivery | $144.10 |
| Copying and Printing | $122.80 |
| Online Research | $518.87 |
| Travel Costs | $211.70 |
| Retained Experts | $32,169.00 |
| Mediation Costs | $3,250.00 |
| **TOTAL** | **$36,917.57** |

(Messing Decl. ¶ 47, Ex. 4, ECF No. 42-3 at 172-178.) The Courts' review of the individual charges reflects a total amount of charges in the amount of $36,917.57, the same reflected on the computer breakdown.[12] The moving papers and settlement agreement reflect a slightly lesser amount of $36,896.77 in total costs, and the Court will utilize this lesser amount agreed to. While there are no individual receipts attached for the less significant costs, such costs are supported by the firm's computerized breakdown. The more significant costs for mediation and expert fees are documented with the attached invoices from the mediator and expert consultant firms. (ECF No. 42-3 at 179-196.)

       While the Court ultimately finds the costs incorporated into the settlement agreement to

---

[12] Postage and delivery (21.15 + 7.85 + 2.5 + 33.65 + 0.65 + 2.6 + 0.5 + 0.65 + 0.5 + 0.5 + 73.55 = $144.10); copying and printing (2.8 + 7 + 8 + 2 + 13.2 + 15.8 + 0.5 + 6.2 + 0.4 + 0.3 + 0.7 + 5 + 0.8 + 1 + 0.8 + 0.1 + 4.8 + 0.6 + 2.1 + 12.8 + 5.9 + 3.8 + 7.4 + 20.8 = $122.80); online Research (6.01 + 62.8 + 4.26 + 6.36 + 7.35 + 1.69 + 12.25 + 4.59 + 8.31 + 379.77 + 14.62 + 10.86 = $518.87); travel costs (197.2 + 1.5 + 13 = $211.70); expert costs (810 + 2275.1 + 1595 + 26112.5 + 1377.5 = $32,170.10); mediation ($3,250.00); filing fee ($500.00); service of process ($100.00); for a sum total of costs ($36,917.57). (ECF No. 42-3 at 172-178.)

be reasonable, the Court does find the expert fees to be significant, and turns to discuss such expert fees in more detail.  The parties state plainly that "Courts have allowed the recovery of expert fees."  (Mot. 29.)   The cases cited by the parties do not clearly demonstrate the appropriateness of awarding expert fees as costs in an FLSA action, at least in the Ninth Circuit. (Mot. 29-30.)  However, courts in this district and throughout the Ninth Circuit do routinely approve the recovery of expert costs as part of an FLSA settlement or judgment.  See Selk, 159 F. Supp.3d at 1181 (in FLSA motion for approval of settlement, approving "$10,218 in litigation costs, including filing fees, deposition costs, third party administration fees, and expert fees."); Smothers v. NorthStar Alarm Servs., LLC, No. 217CV00548KJMKJN, 2020 WL 1532058, at *11 (E.D. Cal. Mar. 31, 2020) (in granting motion for final approval and attorneys' fees in combined FLSA and Rule 23 action, approving $13,822.30 in costs including filing fees, court reporter and transcript fees, expert fees, travel costs to hearings and mediation, mediation fees, copy charges and postage charges," as no class members objected to the amount, and they were "reasonable and are of the type routinely approved by courts for reimbursement."); Tenorio v. Gallardo, No. 116CV00283DADJLT, 2019 WL 3842892, at *6 (E.D. Cal. Aug. 15, 2019) (In action involving FLSA claims, violations of Agricultural Workers Protection Act, and California Labor Code, while denying certain legal research costs, granting motion for attorneys' fees and costs, including costs of expert services); Franco v. Ruiz Food Prod., Inc., No. 1:10-CV-02354-SKO, 2012 WL 5941801, at *22 (E.D. Cal. Nov. 27, 2012) (In action involving FLSA and California Labor Code claims, granting final approval of settlement and award of $30,000 in costs, including  "travel costs, mediation fees, expert fees, copy and scanning costs, filing fees, and electronic research fees," as " types of fees are routinely reimbursed.").[13]

---

[13]  See also Vega v. Weatherford U.S., Ltd. P'ship, No. 1:14-CV-01790-JLT, 2016 WL 7116731, at *17 (E.D. Cal. Dec. 7, 2016) (in combined FLSA and Rule 23 motion for final approval of settlement, approving request for costs including filing fees, messenger fees, legal research expenses, copying costs, mediation fees, postage, federal express charges, expert fees, mileage, and travel expenses for court hearings and mediation, as costs "routinely reimbursed."); Acevedo v. City of Los Angeles, No. CV145661GHKPJWX, 2016 WL 11525321, at *10 (C.D. Cal. Dec. 2, 2016) (granting motion for attorneys' fees in FLSA action, while deducting costs of reasonable travel, awarding costs including those for experts, printing, mediation, transcripts, pro hac vice applications, and a courier service); Goltermann v. City of San Gabriel, No. 219CV09575JGBPLAX, 2020 WL 3172012, at *2 (C.D. Cal. June 12, 2020) (in adopting Rule 68 offer of entry of judgment in FLSA action, accepting set amount of $100,000.00 for payment of attorneys' fees, expert fees, and costs); Madrid v. teleNetwork Partners, LTD., No. 5:17-CV-04519-

However, the Court notes that at least where expert fees are challenged by an opposing party when adjudicating the shifting of costs of an action to the non-prevailing party, some courts hold the FLSA does not allow such shifting of expert fees, while also noting the Ninth Circuit has not addressed the issue specifically as to the FLSA.[14]

---

BLF, 2019 WL 3302812, at *7 (N.D. Cal. July 23, 2019) (approving litigation costs including expert witness fees in FLSA motion for approval of settlement); Heath v. Google LLC, No. 15-CV-01824-BLF, 2019 WL 3842075, at *7 (N.D. Cal. Aug. 15, 2019) (approving litigation costs including expert witness fees in FLSA motion for approval of settlement); Boconvi v. Velocity Express, LLC, No. 17-CV-02623-JST, 2018 WL 2248988, at *5 (N.D. Cal. May 17, 2018) (granting in part motion for attorneys' fees in FLSA action including $136,575.60 in costs, including expert costs, though reducing expert fees by 10%); Morris v. Fid. Investments, No. C 17-06027 WHA, 2019 WL 4040069, at *3 (N.D. Cal. Aug. 26, 2019) (in combined Rule 23 class action and FLSA collective action, granting motion for reimbursement of costs including $10,134.50 for a data expert, in addition to travel, postage, research, and copies, as reasonable and necessary part of the litigation and type typically billed to client); Cortez v. Vieira Custom Chopping, Inc., No. 117CV01647DADSKO, 2020 WL 4369101, at *9 (E.D. Cal. July 30, 2020) (in combined Rule 23 class action and FLSA collective action, noting recoverable costs include expert costs); ADAM GOODWIN, individually & on behalf of all others similarly situated, Plaintiff, v. WINN MANAGEMENT GROUP LLC, Defendant., No. 115CV00606DADEPG, 2018 WL 1036406, at *9 (E.D. Cal. Feb. 23, 2018) (same); McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc., No. 116CV00157DADJLT, 2017 WL 5665848, at *9 (E.D. Cal. Nov. 27, 2017) (same).

[14] In Moore, the court stated: "DVT cites the Tenth Circuit's decision in Gray v. Phillips Petroleum Co., 971 F.2d 591 (10th Cir. 1992) for the proposition that § 216(b) does not provide explicit statutory authority for the recovery of expert witness fees [but] provides only for the shifting of a reasonable attorney's fee and the costs of the action [as] Gray references West Virginia Hospitals, Inc. v. Casey, 499 U.S. 83 (1991) for the conclusion that the phrase 'a reasonable attorney's fee' does not include within its scope expert witness fees [and] [m]oreover, 'costs' are defined in 28 U.S.C. § 1920, which does not include expert witness fees unless the expert is appointed by the court. 28 U.S.C. § 1920(6)." Moore v. Deer Valley Trucking, Inc., No. 4:13-CV-00046-BLW, 2016 WL 4745174, at *2 (D. Idaho Sept. 12, 2016). The court concluded that while the Ninth Circuit has not addressed this issue, [] the Tenth Circuit's conclusion is an accurate reading of the statute, Casey, and § 1920 [and] appears to be in line with several other courts which have addressed the issue," and thus declined to award expert witness fees and found "[t]he same can be said for the minimal postage and photocopy fees – they are not statutorily authorized, and Plaintiffs may not recover costs for them." Id.; see also Krouse v. Ply Gem Pac. Windows Corp., No. 3:10-CV-00111-HA, 2012 WL 3241678, at *4 (D. Or. Aug. 7, 2012) (in post-trial challenge to bill of costs submitted by Plaintiff, court found "[b]ecause the FLSA does not provide express statutory authority for expert witness fees, plaintiff's request for $2,200.00 must be denied."); Banta v. City of Merrill, Or., No. CIV. 06-3003-CL, 2007 WL 3543445, at *5 (D. Or. Nov. 14, 2007) ("In an FLSA case, the Seventh Circuit determined that the FLSA fee-shifting provision did not provide the express statutory authority required by Crawford for the recovery of expert witness fees."); LaParne v. Monex Deposit Co., No. SACV08302DOCMLGX, 2011 WL 13176103, at *3 (C.D. Cal. Feb. 28, 2011) ("Similarly, the Supreme Court has held that, except in certain discrimination cases, the prevailing party under a fee-shifting statute may not recover expert fees as costs, and is limited to recovery of the per diem witness fee of $40 . . . California Labor Code § 1994, the provision of California law under which Plaintiffs bring their state-law claims, does not mention expert fees, let alone provide express authorization for awarding them [and at] the federal level, those circuits to address the rule articulated in Arlington Central in the context of FLSA claims hold that the FLSA does not provide an exception to the general rule . . . The instant Court agrees with the logic of these decisions. Accordingly, Plaintiffs are not automatically entitled to over $100,000 in expert fees under the guise of recovering 'costs.' Moreover, Plaintiffs have not presented a compelling case to convince the Court to exercise its discretion to award additional costs. Plaintiffs' experts do not appear to have provided a particularly valuable service. Rather, both Plaintiffs and Defendants relied on **Defendants'** expert, Robert Crandall, for the purposes of confirming a reasonable formula to calculate hours worked and damage figures. Defendants, therefore, have already shouldered much of the costs for expert work product.").

Turning to the actual fees, in relation to the total settlement fund and attorneys' fees, the undersigned is concerned that the expert fees are excessive. The parties argue the expert services were necessary because: (1) the damages were "not easily discernible to a layperson from a simple review of the time and payroll records"; (2) the expert had to analyze and determine the value of the HIL pay that should have been included in the RROP for each Plaintiff from 2015 to 2019; (3) the expert had to apply the appropriate RROP to the overtime earned by each Plaintiff in the appropriate compensation period; and (4) before any of the analysis could begin, the payroll and time records provided by the City had to be converted into a different format. (Mot. 30; Messing Decl. ¶¶ 23-25, 27, 48.)[15] The expert, Kirk Koenig, has over twenty-five (25) years of experience providing financial, economic, forensic accounting, and data analysis services in connection with wage and hour litigation and compliance, and has applied economic, statistical, and complex data analyses to address questions of damages and class certification. (Messing Decl. ¶ 23.) While counsel has used the expert "in several other matters for wage and hour claims," counsel also declares the firm "Messing Adam and Jasmine LLP does not have and has never had any financial interest in the Berkeley Research Group, LLC." (Messing Decl. ¶ 23.)

---

[15] Specifically, counsel declares that "Mr. Koenig and his staff had to spend many extra hours on this case, due to the City providing data and payroll records in formats that were unusable. In addition, while the City voluntarily provided records, the City did not describe how it calculated the overtime rates, including the fact that the City was using the half time rate in computing the regular rate of pay for some items of added compensation, but time and half for others. Completing the calculations was further complicated by the number of issues requiring different combinations and permutations to calculate damages and to ascertain damages using the City's assumptions. Other variables included basing the formula on time and one half as opposed to half time and the floating divisor, applying or not applying credits or offsets, using a two or three year statute of limitations, calculating with or without liquidated damages, increasing the regular rate of pay in pay periods in which holidays fall versus annualizing the rate, and by the fact that the City altered its formula for compensatory overtime at least twice during the recovery period. Additionally, rather than applying factors to one homogenous class as was the case with firefighters in the *Englert* case, here the calculations had to cover sworn employees working under a 7k exemption, as well as 40 hours per week non-sworn employees working under different MOUs and earning different numbers of holidays in lieu annually. Mr. Koenig also calculated offsets and credits for the employer based on contractual overtime and leave time. Finally, employees in this lawsuit are allowed to cash out compensatory time off ("CTO"), unlike firefighters who do not accumulate that leave time. CTO is cashed out at the regular rate of pay at the time the cash out occurs, as opposed to cash payments that are paid at the rate in place when it is earned." (Messing Decl. ¶ 24.) At the August 19, 2020 hearing, the Court further inquired into these proffered reasons for the substantial hours expended by the expert firm. Plaintiffs' counsel confirmed and elaborated on these difficulties, and stated while they had used this expert before, they have never encountered these formatting and data compilation/calculation issues. Adding to the complications in determining how the city calculated overtime, Defendant's counsel confirmed specifically that the City's manner of calculations were changed sometime after the motion to dismiss was adjudicated, and was not sure if these changes were conveyed to Plaintiffs during litigation. Plaintiffs' counsel stated they did not learn of the change until well after, which added to confusion because Plaintiffs' counsel were evaluating the data and not understanding what the root issues were in discrepancies.

Counsel has attached multiple invoices from the expert's firm that itemizes the tasks completed by the various timekeepers. (ECF No. 42-3 at 181-196.) The Court does not find any of the tasks to be facially unreasonable. Accepting the representations of counsel explaining the necessity for experts given the complexity of the records involved, and consent to these terms by the parties and Defendant, the Court does not find the expert fees are out of the bounds of reasonableness or prohibitively expensive. The Court also finds the other documented costs to be reasonable.

Accordingly, the Court recommends approving the total amount of $36,896.77 in costs as agreed to by the parties in the settlement agreement.

## V.

## CONCLUSION AND RECOMMENDATIONS

Accordingly, IT IS HEREBY RECOMMENDED that:

1.      The settlement agreement be approved as fair and reasonable;

2.      The collective be certified for purposes of settlement; and

3.      The joint motion for approval of the settlement be granted.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to this findings and recommendations with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __August 19, 2020__      _____

UNITED STATES MAGISTRATE JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28